## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

In Re:

Old Cutters, Inc.,

               Debtor.

**Bankruptcy Case
No. 11-41261-JDP**

Old Cutters, Inc.,

               Plaintiff,

vs.

City of Hailey,

               Defendant.

**Adv. Proceeding
No. 11-8105-JDP**

Mountain West Bank,

               Plaintiff,

vs.

City of Hailey,

               Defendant.

**Adv. Proceeding
No. 11-8106-JDP**

## MEMORANDUM OF DECISION

MEMORANDUM OF DECISION - 1

*Introduction*

Plaintiffs, chapter 11[1] debtor Old Cutters, Inc. ("Old Cutters"), and

its creditor Mountain West Bank ("MWB"), commenced these adversary

proceedings against Defendant, the City of Hailey ("Hailey").[2]  In

responding to Plaintiffs' complaints, and at a March 15, 2012, pre-trial

conference, Hailey asserted that the Court lacks subject matter jurisdiction

to entertain this action.  Even if the Court has subject matter jurisdiction,

Hailey argued the Court also lacks the constitutional authority to enter a

final judgment in the adversary proceeding.  However, Hailey later

withdrew its objection to the Court's exercise of subject matter jurisdiction,

and expressly consented to the Court's entry of a final judgment.  Despite

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2]  Each plaintiff filed a separate complaint against Hailey.  At a March 15, 2012, joint pre-trial conference, the Court granted a motion by MWB to consolidate *Old Cutters, Inc. v. City of Hailey* (No. 11-8105) and *Mountain West Bank v. City of Hailey* (No. 11-8106) for all further purposes.  The Court directed the continued use of a dual-caption, but indicated that pleadings were only required to be filed in No. 11-8105.

MEMORANDUM OF DECISION - 2

doing so, on June 7, in responding to the Court's order, Hailey again

argued that the Court lacks subject matter jurisdiction.  Inasmuch as

Hailey's submissions have created a continuing question regarding the

existence of this Court's subject matter jurisdiction and/or its constitutional

authority to hear, decide, and enter a final judgment in this action, this

Memorandum settles the issue.

### Facts[3] and Procedural Background

Old Cutters purchased certain real property (the "Property") in 2003,

intending to subdivide and develop it as a residential planned unit

development.  At that time, the Property was subject to Blaine County

ordinances, though it was contiguous to other property located within

Hailey's boundaries.  In anticipation of the Property's development, Old

Cutters investigated various options for providing water and sewer

services to the proposed development, including annexation of the project

into Hailey.

Ultimately, Old Cutters determined to pursue annexation of the

_____

[3] Derived from the undisputed facts in the parties' pleadings.

MEMORANDUM OF DECISION - 3

Property into Hailey.  After a series of public meetings and negotiations

between Old Cutters' and Hailey's representatives, the parties settled on

$3,787,500 as the amount of the annexation fee to be paid by Old Cutters to

Hailey, and executed an Annexation, Services and Development

Agreement ("Annexation Agreement").  As to the annexation fees, the

agreement provides:

> The Parties acknowledge and agree that the
> annexation fee described in this Paragraph 4 are
> [sic] fair and equitable and that the annexation
> fees have been agreed upon as consideration for
> the City providing essential governmental and
> utility services to the Property and to mitigate the
> impact on the City of annexation and
> development of the Property.

Annexation Agreement at ¶ 4.f., Adv. No. 11-8105, Dkt. No. 1-1.  Old

Cutters and Hailey executed the Annexation Agreement on April 10, 2006.[4]

*See* Annexation Agreement, Adv. No. 11-8105, Dkt. No. 1-1.

   Old Cutters paid $1,317,000 of the required annexation fees.  Hailey,

---

[4] Old Cutters and Hailey amended the Annexation Agreement at least
twice; neither amendment altered the total annexation fees owed by Old Cutters.
*See* Adv. No. 11-8106, Dkt. No. 1-1.

MEMORANDUM OF DECISION - 4

relying upon the Annexation Agreement,[5] contends the remaining

$2,470,500 in annexation fees are secured by a first-position lien against the

Property in Hailey's favor.

At about the time Old Cutters and Hailey executed the Annexation

Agreement, Hailey adopted an Inclusionary Community Housing

Ordinance ("ICH Ordinance").  Per the ICH Ordinance, every new

residential development of five lots or more was required to dedicate

twenty percent of its total lots to affordable housing.[6]  Old Cutters

intended to develop a subdivision of up to 149 residential units, and the

parties documented how Old Cutters would meet the requirements of the

ICH Ordinance in their Annexation Agreement.  The parties agreed Old

Cutters would develop twenty-five community housing units, and

---

[5] The Annexation Agreement provides:

> The obligation to pay the installments of annexation
> fees shall create a lien on the Market Rate Lots which
> shall be released in accordance with Paragraph 21 of
> this Agreement.

Annexation Agreement at ¶ 4.f., Adv. No. 11-8105, Dkt. No. 1-1.

[6] Developers also had the option of conveying land or paying an in-lieu
fee as an alternative to dedicating actual lots.

MEMORANDUM OF DECISION - 5

indicated:

> **COMMUNITY HOUSING ORDINANCE.** [Old Cutters] hereby waives any right it may have to assert that the City's Community Housing Ordinance is invalid in whole or in part as it applies to the Subdivision [contemplated by the Annexation Agreement].

*Id.* at ¶ 11 (bold in original).

Hailey repealed the ICH Ordinance in 2010. However, Old Cutters and Hailey would not amend the Annexation Agreement to remove the community housing requirements.

To finance Old Cutters' development of the Property, MWB extended $12,000,000 in credit to Old Cutters in December 2006. To secure this loan, Old Cutters executed a mortgage on the Property in favor of MWB. Adv. No. 11-8106, Dkt. No. 1-2. The loan amount was increased to $13,133,000 in 2008, and MWB's mortgage against the Property was modified accordingly. *Id.*

Old Cutters filed for chapter 11 relief on August 1, 2011. Bankr. No. 11-41261, Dkt. No. 1. Only three parties have filed claims in Old Cutters'

MEMORANDUM OF DECISION - 6

bankruptcy case.  An entity related to Old Cutters, named Old Cutters

Investment, LLC, filed an unsecured claim for $8,314,446, based on a "real

estate sale."  Claim No. 1-1.  MWB filed a claim for $9,227,327.29, based on

a "real estate loan" secured by the Property.  Claim No. 2-1.  And, Hailey

filed a claim for $2,579,855.64, based on the Annexation Agreement,

secured by "Market Rate Lots."  Claim No. 3-1.

Six days after Hailey filed its claim, Old Cutters commenced an

adversary proceeding against Hailey.  Adv. No. 11-8105, Dkt. No. 1.

Through that adversary proceeding, Old Cutters seeks a determination that

"the annexation fee that continues to be demanded by the City is unlawful,

that [Old Cutters] does not owe any additional annexation fees to the City,

and that the City's lien on the Property is void."  Complaint at 13, Adv. No.

11-8105, Dkt. No. 1.  Old Cutters further seeks a determination that the IHC

Ordinance was unlawful, and that Hailey should be permanently enjoined

from enforcing the Annexation Agreement's community housing

requirements.  *Id.* at 13–14.  Old Cutters bases its argument for such relief

on various assertions that Hailey's actions were "illegal," and that it

MEMORANDUM OF DECISION - 7

violated various, largely unspecified,[7] state and federal laws.  *Id.*

MWB initiated its own adversary proceeding against Hailey four

days after Old Cutters filed its complaint.  Adv. No. 11-8106, Dkt. No. 1.

Through that action, MWB sought a determination that, because Hailey

relied on the language of the Annexation Agreement as providing the basis

for its lien against the Property, and because the Annexation Agreement

describes the portion of the Property securing its interest in the annexation

fees as the "Market Rate Lots," that description is insufficient to satisfy the

statute of frauds and Idaho's statutes for establishing a mortgage in

property.  *See id.* at 3–4.  Thus, MWB argued, the lien purportedly created

by the Annexation Agreement is unenforceable, and Hailey's lien should

be avoided.  *Id.* at 4.  MWB also used its adversary proceeding to assert its

objection to Hailey's proof of claim.  *Id.*  In doing so, MWB echoed many of

the arguments from Old Cutters' complaint, including that the annexation

fee was arbitrary and capricious and exceeded Hailey's police power; that

_____

[7] Old Cutters' most specific assertion is that Hailey has violated the Equal
Protection Clause of the Fourteenth Amendment by treating Old Cutters
differently than other developers.  Complaint at 13, Adv. No. 11-8105, Dkt. No. 1.

MEMORANDUM OF DECISION - 8

the fee was an "unauthorized tax;" that it was a taking of property in

violation of the state and federal constitutions; that it was "illegal;" and

that Hailey exceeded its statutory authority and violated substantive due

process. *Id.* at 4–5.

Hailey filed answers to Old Cutters' and MWB's complaints on

January 17 and 19, 2012, respectively. Adv. Dkt. No. 11-8105, Dkt. No. 5;

Adv. Dkt. No. 11-8106, Dkt. No. 7. In each of those answers, Hailey raised

certain affirmative defenses. Notably, in its answer to Old Cutters'

complaint, Hailey asserted:

> This Court, as an Article 1 [sic] Court, does not
> have the judicial authority to exercise all of the
> judicial powers of courts of the United States and
> therefore may not rule on whether the annexation
> fees imposed are or were arbitrary or capricious,
> or exceeded the City's Police Power; constituted
> an unauthorized tax; amounted to an illegal
> taking of private property in violation of the
> Idaho and Federal constitutions; violated the
> equal protection clause of the 14th Amendment;
> or was otherwise illegal. Nor can this Court
> exercise the judicial power of the United States to
> make the same determination concerning the
> legality of the community housing requirements.
> Nor may this Court exercise the judicial powers of

MEMORANDUM OF DECISION - 9

> the United States to grant injunctive relief on the basis of continuing violations of state and federal law.

Answer at 7–8, Adv. No. 11-8105, Dkt. No. 5.  Hailey was more succinct in response to MWB's complaint:

> This Court, as an Article 1 [sic] Court, does not have subject matter jurisdiction to determine the issues raised by Plaintiff in its Complaint, [in its objections to Hailey's proof of claim], and must decline jurisdiction over the allegations contained in [that portion of its Complaint].

Answer at 4, Adv. No. 11-8106, Dkt. No. 7.

The Court held a consolidated pre-trial conference on March 15, 2012.  At the pre-trial conference, counsel clarified that Hailey questioned the Court's subject matter jurisdiction over the adversary proceedings as well as the Court's constitutional authority to enter a final judgment granting the relief requested by Plaintiffs.  In response, the Court directed the parties to file briefs regarding the subject matter jurisdiction and constitutional authority issues, with Hailey's initial briefing deadline set for April 13.

MEMORANDUM OF DECISION - 10

On April 13, rather than file its brief, Hailey filed a Motion to Vacate

Briefing Schedule on Bankruptcy Court Subject Matter Jurisdiction. Adv.

No. 11-8105, Dkt. No. 12. Hailey urged the Court to vacate the established

briefing deadline because it had moved to dismiss Old Cutters' bankruptcy

case, and had set an evidentiary hearing on the motion for April 17. *Id.*

Hailey asserted that, depending on the outcome of that hearing, the need

for additional briefing may be moot. *Id.* Old Cutters' bankruptcy case was

not dismissed, however, and the Court modified the briefing schedule.

Adv. No. 11-8105, Dkt. No. 19. Hailey was given until May 11 to submit a

brief "concerning the subject matter jurisdiction of [the Court] over [the

adversary proceedings], or concerning the [C]ourt's constitutional power

to enter a final judgment in [the adversary proceedings]." *Id.*

This time, instead of filing a brief, Hailey filed a Notice of

Withdrawal of Defense Re Subject Matter Jurisdiction on May 10, Adv. No.

11-8105, Dkt. No. 22, and "withdrew" the defense on May 15, 2012, Adv.

No. 11-8105, Dkt. No. 23. In doing so, as near as the Court can tell, Hailey

intended to strike those portions of its answers to Plaintiffs' complaints in

MEMORANDUM OF DECISION - 11

which it asserted that this Court lacks subject matter jurisdiction over

Plaintiffs' adversary proceedings.  Adv. No. 11-8105, Dkt. No. 23.  At the

same time, Hailey did not clearly address its position concerning whether

the Court has constitutional authority to enter a final judgment in this

action, nor did it expressly consent to the Court's authority to enter such

judgment.  *See id.*

Unsatisfied that Hailey's withdrawal settled the issue of the Court's

constitutional authority to enter a final judgment, the Court entered yet

another, supplemental order requesting additional briefing on that issue.

Adv. No. 11-8105, Dkt. No. 24.  The day prior to its briefing deadline,

Hailey filed a Response to Supplemental Order Establishing Briefing

Schedule Regarding the Court's Authority to Enter a Final Judgment.  Adv.

No. 11-8105, Dkt. No. 28.  Remarkably, though, rather than focus on the

issue of the Court's constitutional authority, the bulk of Hailey's

"response" is an argument against the Court's subject matter jurisdiction.[8]

---

[8]  In spite of the Court's clear instructions regarding briefing on the issue
of its constitutional authority, and although Hailey acknowledged that it "had
(continued...)

MEMORANDUM OF DECISION - 12

In the end, Hailey urged the Court to "rule that it does not have subject matter jurisdiction to decide the constitutional law issues which the Plaintiffs raise." Hailey's Response at 2, Adv. No. 11-8105, Dkt. No. 28. At the same time, in its lone paragraph addressing the Court's constitutional authority to enter a final judgment, Hailey provided that, if the Court finds it has subject matter jurisdiction to hear and decide this action, "then the City of Hailey will, and does hereby, consent to this Court's entry of a final judgment." *Id.* at 8.

Hailey's "on again-off again" approach to the Court's desire to resolve any jurisdictional or constitutional issues in this action is unfortunate. However, to the extent there may be any remaining questions about whether the Court can and should properly adjudicate the issues in these actions, this Memorandum is intended to finally resolve them.

---

[8](...continued)
intended to, and did, withdraw its objection to subject matter jurisdiction," Hailey seemed to regard the Court's Supplemental Order as a *sua sponte* invitation to revisit its subject matter jurisdiction. Hailey's Response at 2, Adv. No. 11-8105, Dkt. No. 28 ("The City of Hailey understands that this Court must determine its subject matter jurisdiction, even in the absence of a challenge from this Defendant.").

MEMORANDUM OF DECISION - 13

*Discussion*

While Hailey initially objected to this Court's subject matter jurisdiction and its constitutional authority to enter a final judgment, the Court concludes that both of those objections have been resolved.

Regarding the Court's subject matter jurisdiction, Hailey "admit[ted] that [the Old Cutters] Adversary Proceeding may be 'related to' the bankruptcy proceeding" when it filed its answer to Old Cutters' complaint. Hailey's Answer at ¶ 6, Adv. Dkt. 11-8105, Dkt. No. 5.  Hailey also formally withdrew its subject matter jurisdiction objections in both adversary proceedings on May 15, 2012.  Adv. No. 11-8105, Dkt. No. 23.  However, in the event that Hailey may harbor any residual jurisdictional objections,  the Court herein concludes it indeed possesses the requisite subject matter jurisdiction to hear and decide both adversary proceedings.

Congress conferred "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" on the district courts.  28 U.S.C. § 1334(b).  Moreover, Congress allows district courts to refer "any or all cases under title 11 and any or all

MEMORANDUM OF DECISION - 14

proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy judges. 28 U.S.C. § 157(a). In Idaho, the District Court has "refer[red] to the Bankruptcy Judges of this District all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11." Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, Third Amended General Order No. 38 (D. Idaho 1995).

"'Arising under' and 'arising in' are terms of art." *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1076 (9th Cir. 1991). Proceedings arising under title 11 are those that are created or determined by a statutory provision of title 11. *Id.* (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96–97 (5th Cir. 1987)). "'[A]rising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* Included in the scope of "arising in" proceedings are administrative matters and determinations of the validity, extent, or priority of liens. *See id.; Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th Cir.

MEMORANDUM OF DECISION - 15

2010).

Some proceedings that do not invoke a substantive right created by federal bankruptcy law, and that could exist outside of bankruptcy, also fall within bankruptcy courts' jurisdiction as "related to" proceedings. *In re Eastport Assocs.*, 935 F.2d at 1076–77. In vesting jurisdiction over matters "related to" bankruptcy cases in the district courts, and in allowing those district courts to refer such matters to bankruptcy courts, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). To determine the existence of related to jurisdiction in a given proceeding, the test adopted by the majority of the Circuit Courts of Appeals, and approved of by the Supreme Court, is

> whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* . . . . Thus, the

MEMORANDUM OF DECISION - 16

> proceeding need not necessarily be against the
> debtor or against the debtor's property.  An
> action is related to bankruptcy if the outcome
> could alter the debtor's rights, liabilities, options,
> or freedom of action (either positively or
> negatively) and which in any way impacts upon
> the handling and administration of the
> bankruptcy estate.

*Celotex Corp.*, 514 U.S. at 308 n.6 (quoting *Pacor, Inc.*, 743 F.2d at 994)

(emphasis in original); *see also Fietz v. Great W. Savs. (In re Fietz)*, 852 F.2d

455, 457 (9th Cir. 1988) (adopting the *Pacor* test in the Ninth Circuit).

Of particular import here is the fact that Hailey filed a proof of claim

in Old Cutters' bankruptcy case and asserted a lien on Old Cutters'

Property.  Old Cutters' adversary complaint seeks a determination that it

does not owe Hailey additional annexation fees, that Hailey's lien on Old

Cutters' property is invalid, and that Old Cutters is not required to comply

with the community housing requirements of its annexation agreement.

Because it seeks to determine the validity of Hailey's proof of claim, and

the validity, extent, and priority of Hailey's lien on the Property, Old

Cutters' adversary proceeding "arises in" its bankruptcy, and the Court

MEMORANDUM OF DECISION - 17

has subject matter jurisdiction over the proceeding.

MWB's adversary complaint likewise seeks a determination that Hailey's annexation agreement with Old Cutters is unenforceable, and, as a result, that Hailey's lien against Old Cutters' property is void. In addition, MWB objects to allowance of Hailey's proof of claim in the bankruptcy case. In other words, via its complaint, MWB challenges the validity of Hailey's interest in property of the bankruptcy estate, and invokes the claims allowance process. Moreover, the issues raised by MWB's complaint are obviously intertwined with those implicated in Old Cutters' litigation with Hailey. Clearly, given the size of Hailey's alleged claim in Old Cutters' bankruptcy and its purported secured status, the outcome of these adversary proceedings will significantly impact Old Cutters' ability to reorganize; will impact Old Cutters' rights, liabilities, and options; and will influence the Court's handling and administration of Old Cutters' bankruptcy case. Thus, MWB's claims also "arise in" Old Cutters' bankruptcy case, and the Court has subject matter jurisdiction in that adversary proceeding as well.

MEMORANDUM OF DECISION - 18

As to the Court's authority to enter a final judgment, bankruptcy courts may enter judgments in "all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). "Core proceedings" include: "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A); "allowance or disallowance of claims against the estate," 28 U.S.C. § 157(b)(2)(B); "determinations of the validity, extent, or priority of liens, 28 U.S.C. § 157(b)(2)(K); and "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship," 28 U.S.C. § 157(b)(2)(O). Where such a proceeding also "derives from [the] federal [bankruptcy] regulatory scheme," the bankruptcy court has constitutional authority to enter a judgment in the proceeding. *See* Stern v. Marshall, __ U.S. __, 131 S.Ct. 2594, 2613–15 (2011) (discussing "public rights" cases that Congress can constitutionally assign to "legislative" courts for resolution). These adversary proceedings are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and/or (O). The Court is statutorily authorized to enter a final judgment in the adversary proceedings, and also has the

MEMORANDUM OF DECISION - 19

constitutional authority to do so.

Even if the adversary proceedings were merely "related to" Old Cutters' bankruptcy case, which at a minimum, no doubt, these adversary proceedings are, this Court has statutory and constitutional authority to enter a final judgment "with the consent of all the parties to the proceeding."  *See* 28 U.S.C. § 157(c)(2); *cf. Stern*, 131 S.Ct. at 2614–15 (finding that the bankruptcy court did not have constitutional authority to enter a final judgment because one of the parties "did not truly consent to resolution of [the] claim in the bankruptcy court proceedings").  Hailey has, through its Response to the Court's Supplemental Order, expressly consented to the Court's entry of final judgments in the adversary proceedings.  Plaintiffs consented to the Court's authority to enter final judgment at the March 15 pre-trial conference.  Because all of the parties have consented to the Court's entry of final judgments, the issue of the Court's constitutional authority to enter final judgments has also been resolved.

### *Conclusion*

MEMORANDUM OF DECISION - 20

The Court has subject matter jurisdiction over both Old Cutters' and MWB's adversary proceedings.  It also has the constitutional authority to enter final judgments in each proceeding.

The Court will schedule a continued pre-trial conference in these actions to discuss establishment of case management deadlines and a trial date.

Dated:  June 18, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 21