## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

---

| In Re: | Bankruptcy Case |
|---|---|
| Old Cutters, Inc., | No. 11-41261-JDP |
| Debtor. | |

---

| Old Cutters, Inc., | |
|---|---|
| Plaintiff, | |
| vs. | Adv. Proceeding |
| City of Hailey, | No. 11-8105-JDP |
| Defendant. | |

| Mountain West Bank, | |
|---|---|
| Plaintiff, | |
| vs. | Adv. Proceeding |
| City of Hailey, | No. 11-8106-JDP |
| Defendant. | |

---

## MEMORANDUM OF DECISION

---

MEMORANDUM OF DECISION - 1

### *Introduction*

Plaintiffs, chapter 11[1] debtor Old Cutters, Inc. ("Old Cutters"), and

its principal creditor, Mountain West Bank ("MWB"), commenced these

adversary proceedings against Defendant City of Hailey ("Hailey") to

determine the status and extent of Hailey's claims against Old Cutters.[2]

Old Cutters, MWB, and Hailey have filed cross-motions for summary

judgment.  Dkt. Nos. 50, 52, and 57.[3]  This Memorandum disposes of the

issues raised by those motions.

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references to the "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all references to "Civil Rules" are to the Federal Rules of Civil Procedure, Civil Rules 1–86.

[2]  Old Cutters and MWB each filed a separate complaint against Hailey. At the March 15, 2012, joint pre-trial conference, the Court granted a motion by MWB to consolidate *Old Cutters, Inc. v. City of Hailey* (Adv. Proc. No. 11-8105) and *Mountain West Bank v. City of Hailey* (Adv. Proc. No. 11-8106).  For clarity and convenience, the Court directed the continued use of a dual-caption and that all future pleadings be filed only in Adv. Proc. No. 11-8105.

[3] In Dkt. No. 57, Hailey requests a summary judgment against both Old Cutters and MWB.

MEMORANDUM OF DECISION - 2

*Facts*[4]

*Acquisition of the Property*

In 2003 and 2005, Old Cutters[5] purchased and assembled a tract of

real property in Blaine County, Idaho (the "Property") that was contiguous

to Hailey's city boundaries.  Old Cutters acquired the Property intending

to subdivide and develop it as a residential planned unit development.

The total purchase price of the Property was $6.2 million, and Old Cutters'

acquisition was financed through cash contributions from its principal,

John Campbell and his company, COR, LLC, together with a $4.4 million

bank loan made to Old Cutters.

---

[4] These facts are derived from a prior Memorandum of Decision entered
by the Court in this litigation, (Dkt. No. 30), and from the parties' statements of
undisputed facts submitted as required by L.B.R. 7056.1(b).

[5] At that time and up until 2006, the legal entity involved in the project
was Old Cutters Investment, LLC.  John Campbell had organized Old Cutters
Investment, LLC in 2003 and was a member along with his wife and another
entity known as COR, LLC.  In 2006 Old Cutters, Inc. (Debtor and the plaintiff in
this adversary proceeding), another corporation owed by Campbell, acquired the
assets of Old Cutters Investment, LLC.  For clarity's sake, and because it is of no
consequence to the outcome of the pending motions, in summarizing the facts
the Court refers to Old Cutters Investment, LLC and Old Cutters, Inc.,
collectively as Old Cutters.

MEMORANDUM OF DECISION - 3

In connection with its development planning, Old Cutters

investigated various options for providing water and sewer services to the

project.  One option was to develop the Property in Blaine County, but this

would require Old Cutters to construct a pocket sewage treatment plant for

the new housing.  Another option was to seek annexation of the Property

into Hailey so the development and the homes to be constructed  could

access city water and sewer services.

### The Annexation Agreement and the Fee

Old Cutters, acting through Campbell, approached Hailey to explore

the prospects for and costs of annexation of the Property by speaking to a

member of the Hailey city council, Rick Davis.  The councilman advised

Campbell that a fiscal study had been prepared in 2001 by consultant

Tischler & Associates ("Tischler Study") that had been used by Hailey in

connection with the recent annexation of a development property known

as Airport West.  The Tischler Study had analyzed and computed potential

costs to Hailey resulting from the proposed annexation, and based on its

conclusions, made recommendations to Hailey concerning the amount it

MEMORANDUM OF DECISION - 4

should impose on the developer for annexation fees to offset the resulting

actual costs to be incurred by Hailey in incorporating the new

development.

Old Cutters reviewed the Tischler Study and estimated that, if the

Property were to be annexed, the annexation fee it should expect to pay to

Hailey should amount to about $350,000.  Of course, in making the

estimate, Old Cutters assumed that Hailey would fix the amount it would

be required to pay for an annexation fee based on the information in the

Tischler Study.  In addition, Old Cutters concluded, based on

conversations with Hailey city council members, that annexation of the

Property into Hailey could be accomplished more quickly than the time

required to obtain the authorization to develop the Property in Blaine

County.  The proposed short time frame to have the Property annexed was

essential to Old Cutters' plans because it needed to begin selling lots as

soon as possible to pay off the loan it had obtained to purchase the

Property.  For these reasons, Old Cutters decided to pursue annexation of

the Property into Hailey; it submitted its annexation application to Hailey

MEMORANDUM OF DECISION - 5

in August 2003.

The first public hearing before the Hailey city council concerning Old Cutters' annexation application occurred in November 2003. No decision was made about the application at that time, and the hearing was continued repeatedly to dates in January, February, and March, 2004. At a meeting on March 8, 2004, the city council decided that, in considering Old Cutters' application, it would not use the Tischler Study to determine the annexation fee to charge Old Cutters, and that Hailey would instead seek completion of a new fiscal study. Hailey employed Management Partners ("MP") to conduct the new study.

MP finally submitted an initial draft of its study to Heather Dawson, Hailey's Clerk and Treasurer, in October, 2005. Having collected and analyzed various information, the draft study recommended that Old Cutters be charged $788,000 as an annexation fee for the Property. The draft study recommended this figure by not only referring to the direct

MEMORANDUM OF DECISION - 6

costs to Hailey resulting from the annexation,[6] but by also including a share of Hailey's projected future budget deficiencies, future capital expenditures, and other costs not directly associated with the annexation of the Property.

After speaking with Dawson and Tom Hellen, the city engineer, MP further revised and submitted a final report in November 2005 (the "MP Report"). In it, the recommended annexation fee to be charged to Old Cutters for the Property was yet again increased, this time to $1,875,920. This amount was derived by expanding the scope of annexation costs analysis ever further to include a variety of additional future municipal capital projects that Hailey hoped to be able to undertake, as well as to include other factors beyond the actual costs of annexing the Property.

Remarkably, it was decided that further study occur, and after yet another revision, in December 2005, the MP Report concluded that

---

[6] During her deposition, Ms. Dawson acknowledged that the amount recommended by MP in its draft study for an Old Cutters annexation fee exceeded the actual costs to Hailey in annexing the Property. Deposition of Heather Dawson, Dkt. No. 50-2, Ex. F at 60 (p. 54, lines 3-6 in the deposition).

MEMORANDUM OF DECISION - 7

$2,056,427 was an appropriate annexation fee for the Property.

Old Cutters' management was perplexed by this process and frustrated with the delays involved in Hailey's consideration of its application and the repeated increases in the recommended annexation fee. On January 6, 2006, Old Cutters, through its attorney, sent a letter to Hailey offering to pay a $2,000,000 annexation fee, although Old Cutters strongly disputed the validity of the methods utilized and conclusions reached in the MP Report. Old Cutters specifically objected to the consultant's assumptions that Old Cutters should be required to pay a portion of costs to Hailey beyond the actual expenses to be incurred by Hailey in annexing the Property. Old Cutters' offer was rejected by Hailey.

Another public hearing on Old Cutters' application was held on January 9, 2006. At that meeting, presumably based on her own analysis, Dawson recommended that the city council reject the latest MP Report recommended annexation fee, and suggested that, instead, the annexation fee negotiations between Hailey and Old Cutters start at not less than $3,000,000. The council members agreed that $3,000,000 would be the

MEMORANDUM OF DECISION - 8

starting point for further negotiations with Old Cutters.

After more meetings and negotiations between Old Cutters' and

Hailey's representatives, the parties settled on $3,787,500 as the amount of

the annexation fee to be paid by Old Cutters to Hailey.  On April 6, 2006,

Hailey and Old Cutters executed an Annexation, Services and

Development Agreement ("Annexation Agreement").  As to the

annexation fees, the agreement included the following provision:

> The Parties acknowledge and agree that the annexation fee
> described in this Paragraph 4 are [sic] fair and equitable
> and that the annexation fees have been agreed upon as
> consideration for the City providing essential
> governmental and utility services to the Property and to
> mitigate the impact on the City of annexation and
> development of the Property.

Annexation Agreement, Dkt. No. 1-1 at ¶ 4.f.[7]  The Annexation Agreement

required Old Cutters to pay the annexation fee in installments beginning

sixty days after the final plat for the subdivision was recorded.  *Id.*  Then,

each year after recordation up to year four, or when a certain percentage of

---

[7] Old Cutters and Hailey amended the Annexation Agreement at least
twice after it was executed; neither amendment altered the total annexation fees
owed by Old Cutters.  *See* Adv. No. 11-8106, Dkt. No. 1-1.

MEMORANDUM OF DECISION - 9

lots were sold, the agreement called for a payment by Old Cutters of

$875,125. *Id.* To secure Old Cutters' obligation to pay the annexation fees,

the Annexation Agreement granted Hailey a lien on the "Market Rate

Lots" proposed to be developed in the Property. *Id.*[8]

The Annexation Agreement also included a severance clause in a

paragraph it labeled "PARTIAL INVALIDITY." It stated:

> In the event that any provision of this Agreement is
> deemed to be invalid by reason of the operation of any
> law, or by reason of the interpretation placed thereon by
> any court or other governmental body, this Agreement
> shall be construed as not containing such provision and
> the invalidity of such provision shall not affect the validity
> of any other provision hereof, and any and all other
> provisions hereof which otherwise are lawful and valid
> shall remain in full force and effect.

Annexation Agreement, Dkt. No. 1-1, at ¶ 23.

On April 10, 2006, Hailey adopted Hailey Ordinance Number 939,

---

[8]The Annexation Agreement provides:

The obligation to pay the installments of annexation fees shall
create a lien on the Market Rate Lots which shall be released in
accordance with Paragraph 21 of this Agreement.

Annexation Agreement, Dkt. No. 1-1 at ¶ 4.f. Of course, at that point, no lots had
been either platted or developed on the Property.

MEMORANDUM OF DECISION - 10

which officially annexed the Property into the city.  The Annexation

Agreement was initially recorded in the county recorder's office on April

27, 2006.

To finance Old Cutters' development of the Property, in December

2006, Old Cutters sought and obtained $12,000,000 in credit from MWB.

To secure this loan, Old Cutters granted a mortgage on the Property in

favor of MWB, which was recorded on December 4, 2006.  Adv. No. 11-

8106, Dkt. No. 1-2.  The loan amount was eventually increased to

$13,133,000 in 2008, and MWB's mortgage against the Property was

modified accordingly.  *Id.*

As development of the Property proceeded, Old Cutters paid a total

of $1,317,000 of the annexation fee to Hailey in four different payments:

$287,000 after the final plat for the subdivision was recorded; $930,000 in

March 2009; and later, two $50,000 payments upon the sale of two lots.

Relying upon the Annexation Agreement, Hailey contends the balance due

on the annexation fee of $2,470,500, and it claims this balance is secured by

a first-position lien against the Property in Hailey's favor.

MEMORANDUM OF DECISION - 11

### *The Community Housing Requirements*

In December 2005, Hailey had adopted what it called an

"Inclusionary Community Housing Ordinance" ("ICH Ordinance").

According to the ICH Ordinance, all new residential developments of five

lots or more were required to dedicate at least twenty percent of the total

lots to what it defined as affordable housing.  Old Cutters intended to

develop up to a total 149 residential units on the Property, and the parties

documented how Old Cutters intended to meet the requirements of the

ICH Ordinance in the Annexation Agreement.  The Annexation Agreement

committed Old Cutters to develop twenty-five community housing units; it

also provided that:

> COMMUNITY HOUSING ORDINANCE. [Old Cutters]
> hereby waives any right it may have to assert that the
> City's Community Housing Ordinance is invalid in whole
> or in part as it applies to the Subdivision [contemplated by
> the Annexation Agreement].

Annexation Agreement, Dkt. No. 1-1, at ¶ 11 (emphasis in original).

Presumably motivated by the adverse decisions of two state district

courts holding that similar community housing ordinances were invalid,

MEMORANDUM OF DECISION - 12

Hailey repealed the ICH Ordinance in 2010.  However, although Old

Cutters requested it do so, Hailey refused to amend the Annexation

Agreement to release Old Cutters from the community housing

requirements in the Annexation Agreement, citing the waiver provision

noted above.  Hailey did, however, agree to remove similar community

housing requirement it had imposed for development of a subdivision

known as Sweetwater.

### The Bankruptcy Case and Adversary Proceedings

Of course, the recession impacted Old Cutters' ability to sell lots, and

as a result, its ability to pay real property taxes, the balance due on the

Annexation Agreement, and the MWB loan.  Old Cutters' declining

financial difficulties caused it to file a petition for relief under chapter 11 on

August 1, 2011.  Bankr. No. 11-41261, Dkt. No. 1.  Old Cutters cites the

delays and costs it incurred in the annexation process, and its

corresponding inability to take advantage of a favorable real estate market

preceding the recession, as the primary reasons for the bankruptcy filing.

Bankr. No. 11-41261, Dkt. No. 100, at 7.

MEMORANDUM OF DECISION - 13

Other than Blaine County's claims for unpaid real estate taxes, only three parties asserted creditor claims in Old Cutters' bankruptcy case. Old Cutters Investment, LLC, filed an unsecured claim for $8,314,446, arising out of a "real estate sale." Claim No. 1-1. MWB filed a claim for $9,227,327.29 secured by the Property. Claim No. 2-1. And Hailey filed a claim for $2,579,855.64, based on the Annexation Agreement, secured by "Market Rate Lots." Claim No. 3-1. After several attempts to obtain approval of a debt-repayment plan, all of which generated objections from Hailey, the parties achieved a consensus, and on December 18, 2012, the Court confirmed Old Cutters' Second Amended Plan of Reorganization. *See* Bankr. No. 11-41261-JDP, Dkt. No. 209. The confirmed plan takes into account resolution of this adversary proceeding.[9]

Shortly after Hailey filed its proof of claim, Old Cutters commenced an adversary proceeding against Hailey. Adv. No. 11-8105, Dkt. No. 1. In

---

[9] In summary, the plan allows Old Cutters to market and sell its lots in the Property. The proceeds are used to pay sales costs and real property taxes. After a modest allowance to Old Cutters to fund operations, the balance of the proceeds are to be escrowed pending the outcome of this litigation.

MEMORANDUM OF DECISION - 14

its complaint, Old Cutters seeks a declaratory judgment determining that "the annexation fee that continues to be demanded by the City is unlawful, that [Old Cutters] does not owe any additional annexation fees to the City, and that the City's lien on the Property is void."  Complaint at 13, Adv. No. 11-8105, Dkt. No. 1.  Old Cutters also seeks a declaratory judgment that the IHC Ordinance was unlawful and unenforceable, and requests that Hailey be permanently enjoined from enforcing the Annexation Agreement's community housing requirements against Old Cutters.  *Id.* at 13–14.

MWB commenced its adversary proceeding against Hailey a few days after Old Cutters filed its complaint.  Adv. No. 11-8106, Dkt. No. 1.  In that action, MWB seeks a determination that Hailey's claimed lien in the Property is invalid.  *See id.* at 3–4.  In its complaint, MWB also objects to allowance of Hailey's proof of claim.  *Id.*  In doing so, MWB echoes many of the arguments made in the Old Cutters' complaint, including that the annexation fee provisions of the Annexation Agreement are arbitrary, capricious and exceeded Hailey's police powers to impose; that the fee is an unenforceable "unauthorized tax;" that the fee constitutes a taking of

MEMORANDUM OF DECISION - 15

property in violation of the state and federal constitutions; and that the fee

is otherwise "illegal." *Id.* at 4–5.

Hailey filed answers to Old Cutters' and MWB's complaints on

January 17 and 19, 2012, respectively.  Adv. Dkt. No. 11-8105, Dkt. No. 5;

Adv. Dkt. No. 11-8106, Dkt. No. 7.

On October 10, 2012, Old Cutters filed a motion for summary

judgment.  Dkt. No. 50.  In its motion, Old Cutters asks the Court to declare

that, in imposing the annexation fee and community housing

requirements, Hailey exceeded its legislative powers, and that those

provisions of the Annexation Agreement are unenforceable.  Old Cutters

requests that the Court declare that Hailey violated the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution by

demanding that Old Cutters pay it more than the actual costs of annexing

the Property.  Finally, Old Cutters requests that this Court enjoin Hailey

from enforcing the community housing provision of the Annexation

Agreement.

On the same day, MWB also filed a motion for summary judgment.

MEMORANDUM OF DECISION - 16

Dkt. No. 52.  In it, MWB seeks a declaration from the Court that the

Annexation Agreement does not create an enforceable lien on the Property

under the Idaho statute of frauds and the mortgage statutes.  MWB joins in

the Old Cutters' arguments challenging both the annexation fee and the

community housing requirements in the Annexation Agreement,

contending they are illegal and unenforceable.

Hailey filed its motion for summary judgment on October 10, 2012.

Dkt. No. 57.  Hailey seeks a judgment declaring that the Annexation

Agreement creates an enforceable lien in the Property, and that the

Annexation Agreement fee and housing requirements provisions of the

parties' contract are valid and enforceable.

The parties filed briefs in support of their respective positions.  Dkt.

Nos. 50-10, 53, and 62.  On November 20, 2011, the Court conducted a

hearing on the summary judgment motions at which counsel for the

parties appeared and argued.  The Court took the issues raised by the

motions under advisement at the conclusion of the hearing.

MEMORANDUM OF DECISION - 17

*Discussion*[10]

## I.   Summary Judgment Standard

Bankruptcy Rule 7056 incorporates Civil Rule 56, which sets forth

the familiar summary judgment standard for evaluating the parties'

motions here:  "The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Civil Rule 56(a).  A

party seeking summary judgment bears the initial burden to demonstrate

---

[10]  Rejecting Hailey's arguments to the contrary, in a Memorandum of Decision entered on June 19, 2012, Dkt. No. 30, the Court determined that it has subject matter jurisdiction over these adversary proceedings under 28 U.S.C. § 1334(b) because they "arise in" Old Cutters' bankruptcy case, that the adversary proceedings are core proceedings for purposes of 28 U.S.C. § 157(b)(2), and that the Court has the statutory and constitutional authority to enter final judgments and orders in these actions.  As the Court explained in its decision, Hailey is a creditor in this bankruptcy case, and these actions seek to determine whether Hailey's creditor's claim should be allowed, and whether the lien Hailey claims in the Property is valid and enforceable.  Moreover, Hailey has never exercised its statutory right to request that the district court withdraw the reference of this adversary proceeding to the Court.  *See* 28 U.S.C. § 157(d). Finally, the Court concludes that its decision concerning its adjudicatory power is consistent with the Ninth Circuit's recent decision in *Exec. Benefits Ins. Agency v. Arkison (In the Matter of Bellingham Ins. Agency, Inc.)*, No. 11-35162, 2012 WL 6013836, at *13 (9th Cir. Dec. 4, 2012).  Accordingly, the Court hereby reaffirms its prior conclusions about its jurisdiction and constitutional authority to enter a final order and judgment for purposes of this decision.

MEMORANDUM OF DECISION - 18

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Once this initial burden is met by the moving party,

the adverse party must come forward with evidence to demonstrate the

existence of a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S.

at 323-24; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). However,

the movant may still be entitled to summary judgment if there is a dispute

of fact so long as there is no "genuine" dispute of fact that could affect the

outcome of the case, or demonstrate that the moving party is not entitled

to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

When parties submit competing motions for summary judgment

targeting the same claims or issues, "each motion must be reviewed on its

own merits." *A.S.A. Produce Co., Inc. v. Everest Nat. Ins. Co.*, 318 Fed. Appx.

589, 590 (9th Cir. 2009) (quoting *Fair Hous. Council of Riverside Cnty., Inc. v.*

*Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001)). That is, a trial court is

required to review the evidence properly submitted in support of each

motion to determine whether each motion satisfies the summary judgment

MEMORANDUM OF DECISION - 19

standard.  *Fair Hous. Council of Riverside Cnty., Inc.*, 249 F.3d at 1136.

With these principles in mind, the Court addresses each of the

parties' motions for summary judgment on the merits.  However, because

MWB's challenges to the Annexation Agreement fee and community

housing requirements significantly overlap with Old Cutters' contentions

and Hailey's response thereto, they are addressed below together.

## II.    Does the Annexation Agreement Create an Enforceable Lien?

### A.    Arguments

As another creditor holding a mortgage on the Property, in seeking

summary judgment, MWB argues that the provisions of the Annexation

Agreement purporting to create "a lien on the Market Rate Lots" does not

satisfy Idaho's statute of frauds because it does not sufficiently describe the

property to which it attaches.  More particularly, MWB argues that

although the Annexation Agreement defines "Market Rate Lots," that

definition does not effectively identify which specific portions of the

Property are subject to Hailey's claimed lien.  MWB relies on the Idaho

Supreme Court's decision interpreting Idaho's statute of frauds, *Ray v.*

MEMORANDUM OF DECISION - 20

*Frasure*, 200 P.3d 1174 (Idaho 2009).  According to MWB, under *Frasure,*

Hailey's lien fails because the Annexation Agreement does not "exactly"

describe the quantity, identity, or boundaries of the property purportedly

secured by the Annexation Agreement.

Hailey responds that the description of the real property in the

Annexation Agreement to which its lien attached satisfies Idaho's statute of

frauds as analyzed by this Court in *Gugino v. Kastera, LLC (In re Ricks)*, 433

B.R. 806 (Bankr. D. Idaho 2011).  Pursuant to the Annexation Agreement,

Hailey claims its lien attaches to the "Market Rate Lots" in the proposed

development, which are defined to include "the one hundred eight (108)

market rate single family and duplex lots.  The four (4) townhouse lots,

three (3) community housing duplex lots and Lot 73 are included in this

calculation."  Hailey also relies on the attachments to the Annexation

Agreement, including "Exhibit 1," which contains a metes and bounds

description of the entire parcel comprising the Property, and "Exhibit 2," a

map which shows the proposed lots within the Property in sequential

order from Lot 1 to Lot 116.  Hailey also reminds the Court that, in the

MEMORANDUM OF DECISION - 21

Annexation Agreement, the parties agreed that "any subdivision

application and approval would ultimately result in the creation of blocks

and lots with numbering that would differ from the numbering of the lots

shown on Exhibit 2." Annexation Agreement, Dkt. No. 63-2, Ex. 24, p. 1,

¶ F. Taken together, Hailey argues, the Annexation Agreement adequately

describes the property to which its lien attached.

In the alternative, Hailey argues that, even if the property

description in the Annexation Agreement is inadequate to satisfy the

statute of frauds, the Court should invoke the doctrine of quasi-estoppel to

prevent MWB from "reaping an unconscionable advantage" by disputing

the validity of Hailey's lien under Annexation Agreement when, at the

time it made the loans to Old Cutters, the Annexation Agreement had been

properly recorded, and that MWB had actual knowledge of its terms.

**B.**    *Analysis*

Idaho Code §§ 9-505(4)[11] and 9-503[12] require that agreements creating

---

[11] Idaho Code § 9-505(4) provides in pertinent part:

(continued...)

MEMORANDUM OF DECISION - 22

an interest in real property be in writing and signed by the party to be

charged.  If the subject transaction involves the granting of a mortgage or

contractual lien, Idaho Code § 45-902 also applies, which mandates that

"[a] mortgage, deed of trust or transfer in trust can be created, renewed or

extended only by writing, executed with the formalities required in the

---

[11](...continued)
In the following cases the agreement is invalid, unless the same
or some note or memorandum thereof, be in writing and
subscribed by the party charged, or by his agent. Evidence,
therefore, of the agreement cannot be received without the
writing or secondary evidence of its contents:

* * * *

(4) An agreement for the leasing, for a longer period than one
(1) year, or for the sale, of real property, or of an interest
therein, and such agreement, if made by an agent of the party
sought to be charged, is invalid, unless the authority of the
agent be in writing, subscribed by the party sought to be
charged.

[12]  Idaho Code § 9-503 provides:

No estate or interest in real property, other than for leases for
a term not exceeding one (1) year, nor any trust or power over
or concerning it, or in any manner relating thereto, can be
created, granted, assigned, surrendered, or declared, otherwise
than by operation of law, or a conveyance or other instrument
in writing, subscribed by the party creating, granting,
assigning, surrendering or declaring the same, or by his lawful
agent thereunto authorized by writing.

MEMORANDUM OF DECISION - 23

case of a grant or conveyance of real property."

In the context of a sale of real property, the Idaho statutes have been collectively interpreted by the Idaho Supreme Court to require that the "description of real property [in the agreement] must adequately describe the property so that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer. 'A description contained in a deed will be sufficient so long as [the] quantity, identity or boundaries of [the] property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers.'" *Ray v. Frasure*, 200 P.3d 1174, 1178 (Idaho 2008) (quoting *Garner v. Bartschi*, 80 P.3d 1031, 1036 (Idaho 2003)).  In particular, the court in *Frasure* decided that an agreement that simply refers to the subject real property's street address, without more, does not satisfy Idaho's statute of frauds.  200 P.3d at 1179.

In a case where a "larger real estate development venture [was] contemplated by the parties," this Court explored and applied the reasoning in *Frasure* to determine whether a real estate purchase agreement satisfied the Idaho statute of frauds.  *Gugino v. Kastera, LLC (In re Ricks)*, 433

MEMORANDUM OF DECISION - 24

B.R. 806 (Bankr. D. Idaho 2011).  In *Ricks*, the Court concluded that a

"hybrid" agreement calling not only for the purchase and sale of land, but

which also included a commitment to provide the personal services

needed to develop the property, satisfied the statute of frauds when it

described the unplatted land to be transferred and developed as, "all the

lots in the first phase of Spur Ranch (recorded name of Bellemeade

Subdivision in Eagle, Idaho, legal description attached hereto as Exhibit A)

consisting of 14 lots south of Flint Drive and 30 lots north of Flint Drive."

*Id.* at 814.  While this description had been challenged in one of the

signator's bankruptcy case as violative of the statute of frauds, the Court

rejected that contention because, in the contract,

> [the parties] did not stop at inclusion of a physical address
> for the property, as did the parties in *Frasure*; rather, they
> provided the existing legal description of the entire
> property, and identified a specific amount of completed
> lots that were to be developed and sold . . . indeed since
> the [] property had not yet been finally platted, they had
> no choice but to rely upon the legal description of the
> whole property supplemented by other informal
> identifying information.

*Id.* at 820-21.  The Court concluded that the real estate agreement in *Ricks*

MEMORANDUM OF DECISION - 25

satisfied the statute of frauds and was enforceable, noting that "defects like those in the *Frasure* contract are not present in the [agreement]." *Id.* at 821.

Based upon the case law, the Court concludes that MWB's motion for summary judgment attacking the validity of the lien created in the Annexation Agreement under Idaho's statute of frauds and mortgage statutes must be denied, and Hailey's motion for summary judgment as to that issue should be granted.

Here, unlike the situation in *Frasure*, the Annexation Agreement and its exhibits adequately describe the location, quantity, and exterior boundaries of the Property. In their contract, Hailey and Old Cutters provided that Hailey's lien securing payment of the annexation fee would attach to "Market Rate Lots," which they then defined to include a specified number of residential lots to be developed on the Property. Exhibit 1 to the Annexation Agreement is a metes and bounds description of the external boundaries of the Property, and Exhibit 2 generally maps out 116 potential lots to be developed at a later date. While it was the best property description available at the time, Old Cutters and Hailey

MEMORANDUM OF DECISION - 26

acknowledged in the Annexation Agreement that Exhibit 2's system for

identifying the lots to be developed would likely change.  As in *Ricks*, as

nearly as they could do so at the time of executing the contract, and given

the undeveloped state of the Property, the parties here identified the

"precise quantity of building lots and the exact outer boundaries of the

project."  *Ricks*, 433 B.R. at 820.  On this record, the Court concludes that

the property description in the parties' agreement is sufficient to satisfy

Idaho's statute of frauds and the requirements of *Frasure*.  Therefore, any

lien created by the parties in Hailey's favor in the Annexation Agreement

is not invalid for violation of the statute of fraud or mortgage statute.

MWB argues that Chief Judge Myers' decision in *In re McMurdie*, 448

B.R. 826 (Bankr. D. Idaho 2010) compels a different result.  It does not.

In *McMurdie*, the Court endorsed a chapter 7 trustee's challenge the

validity of a creditor's deed of trust, which included the property's street

address, but included no legal description of that property.  *Id.* at 828.  In

doing so, the Court acknowledged the prior decision ratifying the use of

street addresses in lien instruments, *Murphy v. Provident Bank (In re Miller)*,

MEMORANDUM OF DECISION - 27

260 B.R. 158 (Bankr. D. Idaho 2001), had been expressly rejected by the

Idaho Supreme Court in *Ray*.  448 B.R. at 830 (citing *Ray*, 200 P.3d at 1178-

79).  In addition, in a footnote, the Court in *McMurdie* distinguished the

outcome in *Ricks* based upon the different nature of the contract examined

in *Ricks*.  *Id.* at 831, n.7.  However, respectfully, this distinction was

unnecessary.  The result in *Ricks* was not influenced by the nature of the

contract involved, and *Ricks* and *Frasure* are consistent.  Based upon the

Idaho Supreme Court's interpretation of the Idaho statutes in *Frasure*, as

discussed in *Ricks*, the Court concludes that the Annexation Agreement,

along with the exhibits, satisfies Idaho's statute of frauds by describing, as

exactly as possible at the time, the "quantity, identity, or boundaries" of

the property to which the lien attached.

   Hailey is entitled to a summary judgment determining that its lien

on the Property is valid under the Idaho statutes.[13]  MWB's motion for

summary judgment on that issue will be denied.

---

   [13] Given this ruling, the Court need not address Hailey's quasi-estoppel
argument.

MEMORANDUM OF DECISION - 28

### III.    Are the Annexation Fee and Community Housing Requirements Enforceable?[14]

All of the remaining arguments in the pending motions focus on the validity of the annexation fee and housing requirements imposed on Old Cutters in the Annexation Agreement.  Accordingly, in resolving the motions, the Court "will consider the entirety of each party's evidentiary submissions, regardless of which motion (or opposition) the evidence accompanied." *Fair Hous. Council of Riverside Cnty., Inc.*, 249 F.3d at 1136-37.

### A.    Are the Annexation Fee and Community Housing Provisions of the Annexation Agreement Reviewable?

---

[14]  Some of the issues raised by the parties pose questions of first impression under the Idaho statutes.  The Court considered certifying one or more of those issues to the Idaho Supreme Court for decision.  *See* Idaho App. R. 12.3(a).  However, the parties have not asked that the Court consider certification and have, through the summary judgment motions,  instead asked the Court to decide the issues.  Moreover, in the context of this bankruptcy case, there is considerable financial benefit to a prompt resolution of the issues.  The Court therefore exercises its discretion to decline to certify any questions to the Idaho Supreme Court.  *See Huntsman Advanced Materials, LLC v. OneBeacon America Ins. Co.*, No. 08-229, 2011 WL 3202936, at *3 n.2 (D. Idaho July 21, 2011) (noting that the language of the rule anticipates the exercise of discretion by a federal court regarding whether to certify a question to the Idaho Supreme Court).

MEMORANDUM OF DECISION - 29

Old Cutters argues[15] that Hailey's imposition of the fee in the

Annexation Agreement constituted an *ultra vires* act to the extent that

Hailey required that Old Cutters pay more than the actual costs of

annexing the Property.  Specifically, Old Cutters challenges Hailey's use of

the annexation fee to require that Old Cutters pay a portion of its future

capital project costs.  Because it was an *ultra vires* act by Hailey, Old

Cutters contends, Hailey may not collect the balance due on the fee.

Old Cutters also challenges the community housing requirements of

the Annexation Agreement as an *ultra vires* act of Hailey.  Old Cutters

reaches these conclusions by noting that cities in Idaho are granted only

limited powers by the Legislature concerning annexations, and that Idaho

---

[15] In its motion and briefing, MWB joins Old Cutters' arguments
challenging the legality of the annexation fee and housing requirements in the
Annexation Agreement.  In response, Hailey contends that MWB lacks standing
to make such arguments.  Given the terms of the confirmed chapter 11 plan, and
the value of the Property, it would appear that, as a potentially subordinate lien
holder, the outcome of this contest over the validity of Hailey's monetary claim,
and Old Cutter's development options, would have a pecuniary impact on the
rights of MWB in this case.  However, because MWB makes no arguments not
also advanced by Old Cutters, the Court need not address MWB's standing in
detail.

MEMORANDUM OF DECISION - 30

courts have struck down attempts by cities to exceed those powers.

In response, Hailey insists that this Court lacks authority to review what was essentially a legislative decision of Hailey's city council in setting the amount of the annexation fee and requiring community housing. Hailey also argues that Old Cutters' claims are barred by applicable statutes of limitation, and that Old Cutters should be estopped from challenging the fee or community housing requirements. If the Court determines that it may review the validity of those provisions, Hailey contends that because the parties freely negotiated the amount of the annexation fee and the community housing requirements in a contract, the Court should deem the fee to be a valid debt and the community housing requirements binding.

### 1. Is the Court Precluded from Reviewing the Terms of the Annexation Agreement?

#### *a. Arguments*

Hailey contends that the Court lacks authority to judicially review a decision of its city council concerning an annexation of this kind. To

MEMORANDUM OF DECISION - 31

support its argument that this issue is nonjusticiable, Hailey cites Idaho

Supreme Court's decision in *Steele v. City of Shelley (In re City of Shelley)*, 255

P.3d 1175 (Idaho 2011), where the court interpreted the annexation

authority granted to cities by Idaho Code § 50-222. Even assuming this

Court may review the enforceability of the fee or community housing

requirements in the Annexation Agreement, Hailey contends that because

Old Cutters did not assert its challenge at the "earliest practicable time" as

required by Idaho Code § 50-222(6), it is barred from seeking such relief.

Old Cutters points out that it does not dispute Hailey's decision to

annex the Property or the other provisions of the Annexation Agreement –

indeed, it agrees with Hailey's decision to annex the Property. Old Cutters

instead takes issue solely with Hailey's method of establishing the amount

of the annexation fee, as well as the community housing requirements, as

*ultra vires* acts. Old Cutters argues that Idaho Code § 50-222, as construed

in *Steele*, does not prevent the Court from granting relief under Idaho's

declaratory judgment statute, Idaho Code § 10-1202.

### b.    *Analysis*

MEMORANDUM OF DECISION - 32

Idaho Code § 50-222 grants cities the authority to annex lands "which are reasonably necessary to assure the orderly development of Idaho's cities in order to allow efficient and economically viable provision of tax-supported and fee supported municipal services . . . and to equitably allocate the costs of public services in management of development of the urban fringe." Idaho Code § 50-222(1). Subsection (3) of this statute delineates three categories of annexations, and depending on which category is implicated, establishes different procedures in order for a city to complete an annexation. Idaho Code § 50-222(3). Of the three categories, there is no dispute that the annexation in this case falls within "Category A," a consensual annexation. *See* Idaho Code § 50-222(3)(a).

Idaho Code § 50-222(6) allows a property owner a limited right to seek judicial review of a city's decision "to annex and zone lands" under some circumstances.[16] In *Steele*, property owners objected to the

---

[16]  The full text of that section of the statute states:

(6) The decision of a city council to annex and zone lands as a category B or category C annexation shall be subject to judicial

(continued...)

MEMORANDUM OF DECISION - 33

annexation of their property by the city of Shelley.  *Steele*, 255 P.3d at 1177.

After the city annexed the owners' property, the owners sought judicial

review of the city's decision to annex their land.  *Id.*  The Idaho Supreme

Court held that judicial review of Shelley's decision to annex the land was

not available under Idaho Code § 50-222(6) because that statute allows

judicial review only for "category B or category C", or in other words,

nonconsensual annexations.  Based upon the definitions in the statute, the

*Steele* case involved a "category A", consensual annexation.  *Id.* at 1178.

In reaching this decision, however, the *Steele* court reasoned that § 50-

222(6) was intended by the Legislature to ensure prompt judicial review of

certain types of annexations, but that the statute should not be "read as an

--------

[16](...continued)
review in accordance with the procedures provided in chapter
52, title 67, Idaho Code, and pursuant to the standards set forth
in section 67-5279, Idaho Code. Any such appeal shall be filed
by an affected person in the appropriate district court no later
than twenty-eight (28) days after the date of publication of the
annexation ordinance. All cases in which there may arise a
question of the validity of any annexation under this section
shall be advanced as a matter of immediate public interest and
concern, and shall be heard by the district court at the earliest
practicable time.

MEMORANDUM OF DECISION - 34

actual grant of judicial review." *Id.* at 1179.

Idaho Code § 10-1202, invoked here by Old Cutters, is Idaho's

declaratory judgment statute. It states,

> Any person interested under a deed, will, written contract
> or other writings constituting a contract or any oral
> contract, or whose rights, status or other legal relations are
> affected by a statute, municipal ordinance, contract or
> franchise, may have determined any question of
> construction or validity arising under the instrument,
> statute, ordinance, contract or franchise and obtain a
> declaration of rights, status or other legal relations
> thereunder.

However, this statute authorizes a court to enter a declaratory judgment

only "in a case where an actual or justiciable controversy exists." *Student*

*Loan Fund of Idaho, Inc. v. Payette Cnty.*, 875 P.2d 236 (Idaho Ct. App. 1994).

In determining whether an issue is justiciable and may be adjudged in a

declaratory judgment action, Idaho courts most often consider the

doctrines of standing, ripeness, mootness, and political question. *Miles v.*

*Idaho Power Co.*, 778 P.2d 757, 761 (Idaho 1989).

Here, Hailey objects to Old Cutters' request that the Court review

what Hailey characterizes as legislative decisions by the city council: the

MEMORANDUM OF DECISION - 35

decisions to annex the Property and to contract for a fee, and the decision

to require community housing, and to contract for inclusion of community

housing in the Annexation Agreement.  In making this argument, Hailey

effectively relies upon the political question doctrine.  According to the

Idaho Supreme Court, this doctrine instructs that a court should not

substitute its judgment for that of another "branch of government, when

the matter was one properly entrusted to that other branch."  *Id.*  However,

"passing on the constitutionality of statutory enactments, even enactments

with political overtones, is a fundamental responsibility of the judiciary,

and has been so since *Marbury v. Madison*, 51 U.S. 137 (1813)."  *Id.* at 762.

The Court concludes it is not barred from review of the legality of

the annexation fee or the community housing requirements imposed on

Old Cutters in the Annexation Agreement.  First, while Idaho Code § 50-

222(6) statutorily limits judicial review of city council's decision to *annex*

property via category B and C nonconsensual annexations, it does not limit

a court from issuing a declaratory judgment concerning the legality of an

annexation contract's terms imposing a fee or community housing

MEMORANDUM OF DECISION - 36

requirements.  In *Steele*, the Idaho Supreme Court explained that  § 50-222(6) was "clearly designed to ensure prompt judicial review of those annexations for which judicial review *or declaratory relief* is available, and the provision does not read as an actual grant of judicial review."  255 P.3d at 1179 (emphasis added).  In this statement, the court implicitly acknowledges that judicial review of annexation decisions, and a declaratory judgment action concerning the terms of an annexation agreement, are different.  In other words, while Idaho Code § 50-222(6) restricts a court from supplanting the decision of a city council regarding its decision to affect a "Category A" annexation, the statute does not limit a court from later declaring the rights of the parties to an annexation agreement under Idaho Code § 10-1202.

Here, Old Cutters is not asking this Court to second-guess the decision of Hailey's city council in annexing the Property, as embodied in the ordinance implementing the annexation of the Property.  Rather, Old Cutters asks the Court for a declaration of its rights under the Annexation Agreement, and in particular, to adjudge whether the annexation fee and

MEMORANDUM OF DECISION - 37

community housing requirements established in that agreement are

enforceable.  This Court's authority to entertain Old Cutters' claim is

supplied by Idaho Code § 10-1202.  And determining whether Hailey

exceeded its legal authority in setting the annexation fee and requiring

community housing, or whether in doing so it violated United States

Constitution, is not a political question because the Court need not

substitute its judgment for that of the city council.  Rather, in resolving Old

Cutters' claims, the Court is  interpreting and applying the law.

Finally, Hailey's argument that Old Cutters' action was not pursued

at the "earliest practicable time" and is therefore barred under Idaho Code

§ 50-222(6) also lacks merit.  Hailey cites no authority for this proposition,

and the Court has found no authority to support it.  Of course, as

explained above, Idaho Code § 50-222(6) is designed to ensure prompt

challenges to non-consensual annexation decisions by cities.  It is not

intended to restrict the party's right, via a declaratory judgment action, to

ask a court to consider the enforcement of specific terms of an annexation

agreement.  The Court therefore declines Hailey's invitation to enforce

MEMORANDUM OF DECISION - 38

what in this case would amount to an ambiguous time limitation where

there is no clear indication from the Legislature that it intended such a

result, nor any case law interpreting this provision as Hailey argues.

Under these facts, the Court concludes that it is not precluded from

reviewing the enforceability of annexation fee or community housing

requirements in the Annexation Agreement.

> **2.      Is Old Cutters' Challenge to Terms of the Annexation
> Agreement Barred by the Applicable Statute of
> Limitations?**

> *a.      Arguments*

Hailey next argues that it is entitled to summary judgment because

Old Cutters waited five years and seven months after entering into the

Annexation Agreement to challenge the amount of the fee and community

housing requirements.  Hailey contends that Old Cutters' claims are barred

by the applicable statutes of limitation, and that is true regardless of

whether the three-year statute of limitations of Idaho Code § 5-218 for

statutory liabilities, the four-year "catch-all" statute of limitations under

Idaho Code § 5-224, or the five-year statute of limitations under Idaho

MEMORANDUM OF DECISION - 39

Code § 5-216 for an action on written contracts, applies.

Old Cutters responds that the Idaho statutes of limitation do not apply to an action to void enforcement of illegal conditions in a contract, and cites the Court to *Thompson v. Ebbert*, 160 P.3d 754 (Idaho 2007) and *Infanger v. City of Salmon*, 44 P.3d 1100 (Idaho 2002).

### b.     Analysis

*Thompson* involved a dispute about the provisions of a long-term lease of a garage in a condominium. 160 P.3d at 755. The plaintiff had purchased the condominium and sued seeking a declaratory judgment that the existing lease of the garage in the condo to the defendant was invalid. *Id*. at 756. The defendant argued that the plaintiff's action was barred by the statute of limitations. *Id*.

The Idaho Supreme Court held that the statute of limitations did not bar the purchaser's action because the lease was entered in violation a condominium declaration that required the entire condominium unit to be encumbered as a whole, and was therefore void. *Id*. at 757. In making this ruling the court stated that "because the agreement was void *ab initio*, it

MEMORANDUM OF DECISION - 40

could be challenged at any time." *Id.*

In *Infranger*, the Idaho Supreme Court ruled that a statute of limitations was no bar to a challenge by residents to the city of Salmon's planned conveyance of a portion of a city street. 44 P.3d 1100. The court held that because the city lacked authority to convey a portion of the street, the action was not barred by the statute of limitations. *Id.* at 1106.

Hailey attempts to distinguish these authorities. It notes that Old Cutters is not asking this Court to declare the Annexation Agreement invalid, but rather only to invalidate portions of the contract (*i.e.,* the annexation fee provision and the community housing requirement). Reply Memorandum in Support of Hailey's Motion for Summary Judgment, Dkt. No. 72, at 4. According to Hailey, *Thompson*'s "void contract exception to the application of the statute of limitations" is not applicable here based upon *Farrell v. Whiteman*, 200 P.3d 1153, 1158 (Idaho 2009), where the court stated "[a]n illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy." *Id.* Hailey appears to argue that, under *Farrell*, the Court would

MEMORANDUM OF DECISION - 41

have to find the entire Annexation Agreement void to embrace the

holdings of *Thompson* and *Infranger*.

After review of the Idaho case law, the Court concludes that

offending portions of city contracts may be reviewed and potentially

excised, while leaving the rest of the contract to be fully enforceable.  In

general, "[w]here a transaction is composed of both benign and offensive

components the different portions are severable, the unobjectionable parts

are generally enforceable."  *Farrell v. Whiteman*, 200 P.3d 1153, 1160 (Idaho

2009) (quoting *Nelson v. Armstrong*, 582 P.2d 1100, 1104 (Idaho 1978)); *see

also Sealy Mattress Co. So. Cal. v. Sealy, Inc.*, 346 F.Supp. 353, 358 (N.D. Ill.

1972) (stating, "[e]ven absent a severability provision, whenever possible

courts will enforce the valid parts of partially unlawful contracts.") (citing

*Zajicek v. Koolvent Metal Awning Corp.*, 283 F.2d 127, 133 (9th Cir. 1960)).  Of

course, here, the Annexation Agreement provides that "the invalidity of

such provision shall not affect the validity of any other provision hereof,

and any and all other provisions hereof which otherwise are lawful and

valid shall remain in full force and effect."  Annexation Agreement, Dkt.

MEMORANDUM OF DECISION - 42

No. 1-1, at ¶ 23.

The Court concludes that Old Cutters' challenge in this action to the potentially void provisions of the Annexation Agreement are not barred by any Idaho statute of limitations, and that if the provisions are found invalid, they are severable, leaving the remainder of the Annexation Agreement enforceable.  As *Thompson* and *Infanger* explain, contracts based on void provisions are not protected by a statute of limitations.  And the Court may void portions of the Annexation Agreement leaving the remainder intact as noted in *Farrell*.  Further, as noted above, the Annexation Agreement in this case contains a severance clause, which, as noted in *Sealy Inc.*, lends additional support to the enforceability of the remainder of the Annexation Agreement if the challenged provisions are found to be invalid.

### 3.      Is Old Cutters Estopped from Contesting the Terms of the Annexation Agreement?

#### a.      *Arguments*

Hailey originally argued that it was entitled to summary judgment

MEMORANDUM OF DECISION - 43

based on the doctrine of equitable estoppel, citing to *Alexander v. Tr. of the Vill. of Middleton*, 452 P.2d 50 (Idaho 1969). *See* Memorandum in Support of Motion for Summary Judgment as to Old Cutters Inc., Dkt. No. 62, at 14. Old Cutters responded, contending that Hailey failed to satisfy the case law requirements for application of equitable estoppel because it can point to no false statement made by Old Cutters' representatives. Old Cutters also contended that Hailey's request for equitable relief should be rejected because Hailey is seeking to enforce a term of the Annexation Agreement which it had no legal authority to require.

After Old Cutters responded, Hailey seemingly changed courses, and in its reply, it contends that *quasi-estoppel* is the more appropriate equitable doctrine for application under these facts. Reply Memorandum in Support of Hailey's Motion for Summary Judgment, Dkt. No. 72, at 10. To support its quasi-estoppel argument, Hailey cites to *Terrazas v. Blaine Cnty.*, 207 P.3d 169 (Idaho 2009).

### b.    Analysis

Of course, equitable estoppel and quasi-estoppel are separate

MEMORANDUM OF DECISION - 44

doctrines. *Terrazas*, 207 P.3d at 176. Hailey was obliged to fairly identify

which theory it sought to invoke in urging its motion for summary

judgment. Old Cutters responded to Hailey's equitable estoppel

argument, but because it was first made in the reply, Old Cutters has not

had an opportunity to contest Hailey's quasi-estoppel contentions.

However, because the Court concludes that neither theory has merit, the

Court exercises its discretion to address both of Hailey's estoppel

arguments.

The Idaho Supreme Court recently discussed equitable estoppel,

noting that, for a trial court to invoke the doctrine, the following elements

must be present:

> (1) a false representation or concealment of a material fact
> with actual or constructive knowledge of the truth; (2) that
> the party asserting estoppel did not know or could not
> discover the truth; (3) that the false representation or
> concealment was made with the intent that it be relied
> upon; and (4) that the person to whom the representation
> was made, or from whom the facts were concealed, relied
> and acted upon the representation or concealment to his
> prejudice.

*Washington Fed. Sav. v. Van Engelen*, No. 38484, 2012 WL 5665109, at *5

MEMORANDUM OF DECISION - 45

(Idaho November 16, 2012) (quoting *Ogden v. Griffith*, 236 P.3d 1249, 1255

(Idaho 2010)).

In contrast, "[q]uasi-estoppel 'applies where it would be

unconscionable to allow a person to maintain a position inconsistent with

one in which he acquiesced or of which he accepted a benefit.'" *Rinehart v.*

*Fed. Nat'l Mortg. Assocs., et al. (In re Rinehart)*, No. 11-41210-JDP, 2012 WL

3018291, at *8 (Bankr. D. Idaho July 24, 2012) (quoting *Garner v. Bartschi*, 80

P.3d 1031, 1038 (Idaho 2003)).  The elements of quasi-estoppel are:

> (1) the offending party took a different position than his or
> her original position, and (2) either (a) the offending party
> gained an advantage or caused a disadvantage to the
> other party; (b) the other party was induced to change
> positions; or (c) it would be unconscionable to permit the
> offending party to maintain an inconsistent position from
> one he or she has already derived a benefit or acquiesced
> in.

*Terrazas v. Blaine Cnty.*, 207 P.3d 169, 176 n.3 (Idaho 2009).

Of course, Hailey is not entitled to a summary judgment based on

equitable estoppel.  Indeed, Hailey has offered no undisputed facts to

satisfy any of the elements of equitable estoppel.  It instead relies on the

MEMORANDUM OF DECISION - 46

Idaho Supreme Court's earlier decision in *Alexander* to support its claim,

but that decision does not help Hailey.

In *Alexander*, two years after the fact, several property owners

brought suit against a city to invalidate an annexation ordinance, and to

remove their property from the annexation.  452 P.2d at 51.  The court

noted that while the city had failed to adhere to Idaho's annexation statute

as it existed at that time, the city was nonetheless entitled to judgment on

the basis of equitable estoppel.  *Id.* at 54.  A careful reading of the decision,

though, reveals that the court did not indicate that the elements for

application of equitable estoppel, as they existed at that time, were

satisfied.  Rather, the court cites to its case of *Finucane v. Village of Hayden*,

384 P.2d 236 (Idaho 1963), a decision that mentions equitable estoppel only

once stating, "[t]he defense of laches is a specie of equitable estoppel."

*Finucane*, 384 P.2d at 240.  Further, it should be noted that *Alexander* did not

deal with annexation fees or community housing requirements, or any

other particular facet of the annexation for that matter; it dealt with a

challenge to the validity of the ordinance which annexed the plaintiffs'

MEMORANDUM OF DECISION - 47

land.

In this case, Hailey has not alleged that Old Cutters is guilty of laches, nor can it satisfy the current case law elements for application of equitable estoppel.  Given this record, the Court concludes Hailey may not invoke equitable estoppel to defeat Old Cutters' challenge to the annexation fee or community housing requirements in the Annexation Agreement.

Hailey also may not rely on quasi-estoppel as a defense to the relief sought by Old Cutters in this action.  As stated in *Garner*, the doctrine of quasi-estoppel applies when "it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced or of which he accepted a benefit."  Here, there is no showing that it would be unconscionable to allow Old Cutters to challenge the Annexation Agreement provisions if they violate Idaho state law or the United States Constitution.

Old Cutters has consistently questioned the authority of Hailey to calculate the annexation fee based upon a broad array of projected capital

MEMORANDUM OF DECISION - 48

improvement project costs, in excess of the direct costs to Hailey of the

annexation.[17]  In taking the course it did, Hailey knowingly risked that Old

Cutters may later challenge Hailey's methods in setting the fee.

Proceeding in the face of that risk does not render Old Cutters' challenge

inequitable.  In this respect, Old Cutters is correct in arguing that Hailey

should not be entitled to invoke equity in this context.  *See Precision

Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945)

(holding that a trial court has wide discretion to refuse to apply equity in a

case of unclean hands, and that its discretion is "even wider" when the suit

in equity concerns an issue of public concern).

Moreover, equity may only be invoked by a non-offending party.  *Id.*

---

[17] For example, in his  January 6, 2006, letter to Hailey city attorney Ned
Williamson, James Speck, attorney for Old Cutters, re-stated his client's
continuing opposition to the annexation fee noting that Old Cutters

> [does] not believe it is appropriate to include the cost of future
> capital improvements in the annexation fee calculation.  None
> of the improvements are required due to our annexation
> request - they are apparently proposed for future construction
> whether or not this annexation is approved . . . .

Exhibit F to Campbell's Affidavit, Dkt. No. 50-8, at 62.

MEMORANDUM OF DECISION - 49

At bottom, if quasi-estoppel is applied here, equity could potentially be used as a tool to insulate cities from the consequences of overreaching or exceeding their statutory authority.  Such a tactic would violate another time-honored equitable principle:  *aequitas nunquam contravenit leges* (equity never contravenes the law).  *See Allen v. Kitchen*, 100 P. 1052, 1056 (Idaho 1909) (stating, "where the transaction or the contract is declared void, because not in compliance with express statutory or constitutional provisions, a court of equity cannot interpose to give validity to such transaction or contract, or any part thereof[]" quoting a similar equitable maxim *aequitas sequitur legem* (equity follows the law)).

Hailey may not rely upon equitable doctrines as a defense to Old Cutters' arguments that it acted in excess of its authority in the Annexation Agreement, or otherwise violated the law.

### B.   Is Old Cutters' Obligation in the Annexation Agreement to Pay Additional Fees to Hailey Enforceable?

Having disposed of Hailey's challenges to the Court's ability to entertain and resolve Old Cutters' challenges to the terms of the

MEMORANDUM OF DECISION - 50

Annexation Agreement, the Court directs its attention to the merits of the

parties' arguments.

### 1.    Arguments

Old Cutters argues that it is entitled to a summary judgment

declaring its obligation under the Annexation Agreement to pay additional

amounts to Hailey for annexation fees is unenforceable because Hailey's

imposition of the fee in this case was an *ultra vires* act. Old Cutters argues

that no grant of authority by the Legislature authorized Hailey to require

an annexation fee in the manner it did in this case. More particularly, Old

Cutters argues that, under Idaho law, the annexation fee can not be

sustained under Hailey's annexation authority, police powers, taxing

authority, nor can it be justified as a traditional contract. In advancing this

position, Old Cutters relies heavily on *Black v. Young*, 834 P.2d 304 (Idaho

1992).

Hailey's response to Old Cutters' position effectively narrows the

issues for the Court. It urges that the Annexation Agreement contains a

voluntary, negotiated annexation fee, and that in setting the fee, Hailey

MEMORANDUM OF DECISION - 51

acted "within the general grant of constitutional authority and is not

prohibited by state law." Memorandum in Support of Motion for

Summary Judgment as to Old Cutters, Dkt. No. 62, at 16. In making this

argument, Hailey acknowledges that the annexation fee is not a tax, a

"statutory charge," or a "regulatory fee," and clarifies that it "does not

claim that any of these sources of revenues [sic] justify the annexation fee

described in paragraph 4 of the Annexation Agreement." *Id.* at 19.

Instead, Hailey argues that it was justified in reaching this deal with Old

Cutters based on its general police powers, and because Idaho Code § 50-

222 does not expressly preclude cities from entering into such voluntary

agreements. Memorandum in Opposition to Old Cutters, Inc.'s Motion for

Summary Judgment, Dkt. No. 68, at 19. Hailey further points out that

Idaho Code § 50-301 expressly grants it the power to enter into a contract,

and that *Black* is not applicable to this case, relying for support instead on

*Plummer v. City of Fruitland*, 87 P.3d 297 (2004) and *Ciszek v. Kootenai Cnty.*

*Bd. of Comm'rs*, 254 P.3d 24 (2011). *Id.*

    In essence, then, the issue framed by the parties is whether Hailey

MEMORANDUM OF DECISION - 52

was empowered by Idaho Code §§ 50-222 and 50-301, and its general

police powers, to negotiate and contract with Old Cutters to receive an

annexation fee that exceeded whatever actual costs it may incur as a direct

result of the annexation of the Property.  This appears to be an issue of first

impression.

### 2.    Analysis

"When interpreting state law, this Court is bound by the decisions of

the state's highest court." *McMurdie*, 448 B.R. at 829.  If state law is

unsettled, this "Court 'must predict how the highest state court would

decide the issue.'" *Id.* (quoting *In re Sterling Mining Co.*, 415 B.R. 762, 767-68

(Bankr. D. Idaho) and *In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th

Cir. 2006)).  Because there is no precedent from the Idaho Supreme Court

specifically delineating a city's power to negotiate and contract for

annexation fees, this Court must do its best to predict how the Idaho

Supreme Court would resolve this issue.

As discussed above, Idaho Code § 50-222 authorizes a city to annex

lands "which are reasonably necessary to assure the orderly development

MEMORANDUM OF DECISION - 53

of Idaho's cities in order to allow efficient and economically viable

provision of tax-supported and fee supported municipal services . . . ."

Again, neither Old Cutters nor MWB argue that Hailey lacked authority to

annex the Property in this case; indeed, they continue to support the

parties' decision to do so.  And, obviously, in annexing additional land into

the city, Hailey could be expected to incur costs.  In focusing on the

amount that could be imposed by Hailey as an annexation fee payable by

Old Cutters as part of this process, though, Old Cutters focuses the Court

on other language in the annexation statute that allows the city "to

equitably allocate the costs of public services in management of

development of the urban fringe."  Idaho Code § 50-222(1).

Idaho Code § 50-222 is silent as to whether a city may enter into a

contractual annexation with a landowner.  Assuming a city may do so, the

statute is also mum about what terms and performance a city may require

from the owner of annexed land within such agreement.  Because the

annexation statute does not prohibit consensual annexations, based upon

an Idaho city's § 50-301 general powers to contract, can a city contract to

MEMORANDUM OF DECISION - 54

annex land on whatever terms the city and landowner may determine are appropriate?

It has long been held in Idaho "that municipal corporations have three sources of power and no others:  1. Powers granted in express words; 2. Powers fairly implied in or incident to those powers expressly granted; and 3. Powers essential to the accomplishment of the declared objects and purposes of the corporation." *Black v. Young*, 834 P.2d at 310 (quoting *O'Bryant v. City of Idaho Falls*, 303 P.2d 672, 674-75 (Idaho 1956)).  In *Black*, the Idaho Supreme Court was asked to determine whether Idaho Code § 50-311[18] allowed the city of Ketchum to impose contractual conditions not

---

[18]  The relevant text of Idaho Code § 50-311 reads:

Cities are empowered to: create, open, widen or extend any street, avenue, alley or lane, annul, vacate or discontinue the same whenever deemed expedient for the public good; to take private property for such purposes when deemed necessary . . . provided, however, that in all cases the city shall make adequate compensation therefor to the person or persons whose property shall be taken or injured thereby. The taking of property shall be as provided in title 7, chapter 7, Idaho Code. The amount of damages resulting from the vacation of any street, avenue, alley or lane shall be determined, under such terms and conditions as may be provided by the city

(continued...)

MEMORANDUM OF DECISION - 55

expressly provided for in the statute on property owners as a condition of

granting their petition to vacate an alley.  834 P.2d at 309.  Specifically, the

Black's asked the city council to approve the vacation of an alley under

Idaho Code § 50-311.  In return for the vacation, the Black's offered to pay

$5,000 and to transfer the log cabin and salvageable material from the

property to be vacated to Ketchum.  *Id.* at 306.  The city council rejected

this offer, and instead required that, in addition, the Black's obtain a

building permit, obtain a commitment for $2.5 million construction loan,

and that they agree that the ordinance documenting the vacation

agreement grant Ketchum a right of reversion if a certificate of occupancy

was not timely issued for the motel that the Black's proposed to build.  *Id.*

at 307.  The Black's accepted these terms and signed a written agreement

incorporating them.  *Id.*  They also signed an estoppel affidavit stating that

the conditions imposed by the city and ordinance were acceptable to them,

and which purportedly waived any right to thereafter challenge the

---

[18](...continued)
council . . . .

MEMORANDUM OF DECISION - 56

agreement.  *Id.*

Later, contrary to their agreement, the Black's sued Ketchum to invalidate the ordinance implementing their deal.  They argued that the agreement they had signed was unenforceable because, in entering the contract, Ketchum had acted outside the powers granted to the city by Idaho Code § 50-311.  *Id.*  The district court held that since all of the target terms had been set forth in a contract, which clearly evidenced the intent of the parties, the Black's were bound by their agreement.  *Id.* at 308.

On appeal, the Idaho Supreme Court reversed.  In invalidating the ordinance and agreement, the court observed that "[t]he two conditions that the City of Ketchum imposed upon vacation of the alley, as well as the right of reversion . . . are not expressly granted powers, fairly implied powers from the clear language of Idaho Code § 50-311, nor are they powers essential to the vacation of the alley."  *Id.* at 310.  The court concluded that because the additional conditions imposed on the Black's in the agreement amounted to *ultra vires* acts by the city, they were unenforceable.  *Id.*

MEMORANDUM OF DECISION - 57

While Hailey argues otherwise, *Black* is controlling here. The Court concludes that, faced with the undisputed facts of this case, the Idaho Supreme Court would conclude, consistent with its precedent, that in requiring Old Cutters to pay a fee unquestionably in excess of that required to compensate Hailey for actual costs resulting from the annexation of the Property, Hailey engaged in an *ultra vires* act. As a result, and despite Old Cutters' agreement, Hailey may not enforce that provision of the Annexation Agreement, and is not entitled to recover any additional fees from Old Cutters.

Idaho Code § 50-222(1) expressly recites the "Legislative Intent" upon which the statute is founded. It instructs that the statute was intended to authorize a city to annex lands

> which are reasonably necessary to assure the orderly development of Idaho's cities in order to allow efficient and economically viable provision of tax-supported and fee supported municipal services, to enable the orderly development of private lands which benefit from the cost-effective availability of municipal services in urbanizing areas and to equitably allocate the costs of public services in management of development of the urban fringe.

MEMORANDUM OF DECISION - 58

Idaho Code § 50-222(1).  Fairly construed, there is nothing in this grant of

power to cities that authorizes Hailey to condition annexation of the

Property upon payment by Old Cutters of more than its equitable share of

the costs to be incurred by Hailey in annexing the Property.  As was the

case in *Black*, when Hailey insisted that Old Cutters pay Hailey an

annexation fee of over $3 million, when its actual costs for annexation were

less than $788,000, it acted in excess of its statutory authority.

As the facts clearly show, as the result of the various revisions

requested by Hailey to the MP Report, an increasingly broader scope of

potential expenditures were included in calculating the fiscal "impact" to

Hailey of annexation of the Property.  Indeed, driven by the city's desire to

capture a significant part of the anticipated costs of a variety of ambitious

capital improvement projects, the final estimate by MP was about

$1,270,000 higher than its original calculation.  Then, before striking a deal

with Old Cutters to annex the Property, and without regard to the advice

of its experts, the city clerk inexplicably suggested to the council that the

MP estimate was too low to fund the contemplated capital projects, and

MEMORANDUM OF DECISION - 59

recommended that Hailey further increase the target cost to Old Cutters to

at least $3 million.[19]  The council and Old Cutters finally settled on a figure

closer to $4 million.

Whatever process might be used to inform the council about the

potential costs flowing from the Old Cutters' annexation application, the

eventual figure used by Hailey in this case can not be defended under the

annexation statute.  If Hailey is correct, and the additional fees sought by

---

[19] An excerpt from the deposition of City Clerk, Heather Dawson, evidences Hailey's abandonment of any attempt to allocate only direct costs to Old Cutters resulting from an annexation in favor of an approach designed to generate revenue for the city:

> Q. What did Ned Williamson [Hailey's city attorney] tell you about the amount the City can charge as an annexation fee?

> A. Annexation fees are basically the price of admission to a city, that a developer is willing to pay to glean the services of a city.

Deposition of Heather Dawson, Dkt. No. 50-2, Ex. F at 54 (p. 21, lines 8-12 in the deposition).  Several of the members of the city council who approved the final annexation fee either profess ignorance, or can not remember the basis for selecting the $3.8 million fee amount.  Moreover, it is undisputed that many of the projected capital projects included in the calculation of the fee have never been undertaken by Hailey.  In other words, while Old Cutters has been asked to pay a significant portion of the cost of the projects, and real property taxes too, it has yet to enjoy the benefit of those projects.

MEMORANDUM OF DECISION - 60

Hailey allowed, the directive of the annexation statute requiring that

equity guide the allocation of annexation costs would be negated.  While

private parties enjoy near unfettered flexibility in negotiating contract

terms, the Idaho Legislature and court decisions demand that cities have a

statutory basis for their conduct in this context.  Put another way, Hailey

can not credibly justify its insistence upon payment of over $2 million in

additional annexation fees from Old Cutters as an appropriate exercise of

its "powers essential to the accomplishment of the declared objects" in that

statute.

Hailey's argument that Old Cutters' agreement to pay the

annexation fee should be enforced in this case because it was freely

negotiated, and its consent voluntary, is also not persuasive.  Even

assuming Hailey's premise is correct, this precise argument was advanced

by Ketchum and expressly rejected in *Black*.  834 P.2d at 310.  Moreover, the

facts here suggest that Old Cutters' consent to pay the annexation fee, fixed

after years of study, posturing, and calculating by the city, may have been

compelled by practical and financial necessities that arose during the

MEMORANDUM OF DECISION - 61

nearly three-year process of annexation of the Property, and in light of the

changing economy, Old Cutters need to get some lots sold.  At best, there

is a unresolved question of fact concerning whether Old Cutters, under

these circumstances, agreed, or was financially compelled to consent, to the

excessive annexation fee.

In *Plummer*, the Idaho court examined whether the police powers

Hailey argues that *Plummer* and *Ciszek* require the Court to enforce

the annexation fee contract provision because it acted appropriately under

its general police powers, and because Idaho Code § 50-301[20] authorizes a

city to enter into this sort of agreement.  The Court disagrees.

In *Plummer*, the Idaho court examined whether the police powers

embodied in Article XII, Section 2 of the Idaho Constitution can serve as

the basis for a city's grant of an exclusive solid waste processing franchise

---

[20]  The relevant text of Idaho Code § 50-301 provides:

Cities governed by this act shall be bodies corporate and
politic; may sue and be sued; contract and be contracted with
. . . acquire, hold, lease, and convey property, real and personal
. . . exercise all powers and perform all functions of local
self-government in city affairs as are not specifically prohibited
by or in conflict with the general laws or the constitution of the
state of Idaho.

MEMORANDUM OF DECISION - 62

to a company. *Plummer*, 87 P.3d at 299. The Idaho Constitution provides that "'Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws.'" *Id.* at 299 (quoting IDAHO CONST., art. XII, § 2). Agreeing with Plummer, the court held that the city properly invoked its police powers under the Idaho Constitution in granting the exclusive franchise, and that doing so did not offend other general Idaho laws. *Id.* at 300-01. Importantly, though, the court noted that "[t]his general grant of police power, however, is limited by the restriction that ordinances enacted under the authority conferred by this constitutional provision must not be unreasonable or arbitrary." *Id.* at 300. Because Idaho Code § 50-344 did not expressly prohibit the granting of an exclusive solid waste franchise, the court concluded that the city had the implied power to do so under its general police powers. *Id.*

In *Ciszek*, the Idaho Supreme Court was called upon to decide, among other issues, whether a zoning approval by a county amounted to an illegal contract to zone. 254 P.2d at 28. The Kootenai County Board of

MEMORANDUM OF DECISION - 63

Commissioners granted a single application to rezone two parcels of land.

*Id.* at 27.  The owner of land adjoining these parcels challenged the

county's authority to do so under Idaho Code § 67-6511 arguing that the

plain text of that statute allowed only a single rezone request per

application.  *Id.* at 31.  The court disagreed, concluding that even though

the statute is silent on whether a single application can request to rezone

multiple lots, the county's exercise of its constitutional police powers

under the Idaho Constitution allowed this practice.  *Id.* at 32.

Hailey argues that both *Plummer* and *Ciszek* support the proposition

that because Idaho Code § 50-222 does not expressly prohibit the

methodology it employed in fixing the annexation fee to be paid by Old

Cutters, it acted properly under its constitutional police powers.  But when

read carefully, it is clear the facts presented by both of these decisions are

distinguishable from those here, and from those involved in *Black*.[21]

Again, *Black* holds that cities may not demand a *quid pro quo* from a

---

[21] The Idaho Supreme Court did not cite to *Black* in either *Plummer* or
*Ciszek*, presumably because of the differences in the facts of the cases.

MEMORANDUM OF DECISION - 64

party petitioning the city for its legislative decision beyond that which is

allowed in the authorizing statute.  *Plummer* and *Ciszek* do not vary this

rule.  Those cases involved a city and county regulating activities as

provided in a statute to accomplish ends consistent with the goals of those

statutes by means that may be implied from the text of the Idaho

Constitution and statutes.  In this way, *Plummer* and *Ciszek* are consistent

with the rule announced in *Black* endorsing a city's "powers fairly implied

in or incident to those powers expressly granted."  *Black*, 834 P.2d at 310.

In both *Plummer* and *Ciszek* the court found that the general police powers

allowed the city and county flexibility to accomplish the goals of both

statutes.  In contrast, as in *Black*, where a city demands consideration, a

*quid pro quo*, for enacting legislation, the city engages in an *ultra vires* act.

The general authority granted to cities by the Legislature to enter into

contracts, Idaho Code § 50-301, does not override the more specific rule

announced in *Black* because the general contract power is limited,

authorizing only those agreements not "in conflict with the general laws or

the constitution of the state of Idaho."  Here, the Court concludes that

MEMORANDUM OF DECISION - 65

Hailey's *ultra vires* act in negotiating and agreeing to an annexation fee in

clear excess of that amount needed to compensate Hailey for the actual

costs of annexing the Property conflicts with the general laws of Idaho, as

explained in *Black*.

In summary, Old Cutters is entitled to a summary judgment

declaring the fee provisions of the Annexation Agreement unenforceable as

an *ultra vires* act by Hailey, and providing that Hailey has no right to

collect any further amounts on account of that fee from Old Cutters.[22]

Because Hailey may not collect the balance of the fee, MWB is entitled to a

summary judgment disallowing Hailey's proof of claim, based on the

annexation fee, in the bankruptcy case. Hailey's motion for a summary

judgment endorsing its right to enforce the fee provisions of the

Annexation Agreement is denied.

---

[22] Old Cutters has never suggested that it is entitled to a refund of any
amounts previously paid to Hailey on account of the annexation fee, and to be
clear, the Court does not conclude that a refund is required. Moreover, given
this decision, the Court need not, and does not, express a view concerning the
Plaintiffs' argument that, in this case, Hailey violated Old Cutters' Equal
Protection rights as provided by the Fourteenth Amendment to the United States
Constitution by imposing and attempting to collect the annexation fees.

MEMORANDUM OF DECISION - 66

### C.   Are the Community Housing Requirements in the Annexation Agreement Enforceable?

For the reasons explained above, based on *Black*, the Court also concludes that Hailey's inclusion in the Annexation Agreement of provisions obligating Old Cutters to construct a specified number of "community housing" units was also an *ultra vires* act and is therefore unenforceable. Just as was the case with the excessive annexation fee, Idaho Code § 50-222 has no express provisions and grants no implied authority to Hailey to require Old Cutters to include community housing in its development as a *quid pro quo* for its agreement to annex the Property.

Hailey's response to this aspect of Old Cutters' complaint was to argue that the waiver provision of the Annexation Agreement bars Old Cutters from challenging it. But, recall, the Idaho Supreme Court declined to enforce the Black's agreement and estoppel affidavit expressly waiving the right to challenge the conditions of the Ketchum ordinance vacating the alley. *Black*, 834 P.2d at 310. The Annexation Agreement's waiver

MEMORANDUM OF DECISION - 67

provision is similarly ineffective in this case.[23]

Therefore, Old Cutters is also entitled to a summary judgment

invalidating the community housing requirements in the Annexation

Agreements.

**IV.  Is Old Cutters Entitled to Injunctive Relief?**

Above, the Court determines that Old Cutters is entitled to a

summary judgment declaring the community housing requirements in the

Annexation Agreement unenforceable.  In Count III of its complaint, and in

its motion for summary judgment, Old Cutters requests that the Court also

permanently enjoin Hailey from enforcing the community housing

---

[23]  Two Idaho state district courts have found that similar community
housing ordinances enacted by cities were unenforceable as well.  *See Schaefer v.
City of Sun Valley*, Case No. CV-06-882 and *Mountain Central Board of Realtors, Inc.
v. City of McCall*, Case No. CV 2006-490-C (attached as exhibits X and Z to Old
Cutters' Motion for Summary Judgment) Dkt. No. 50-5.  Those decisions
concluded that the community housing requirements amounted to an illegal tax
and invalidated them on that basis.  For the reasons discussed above, the Court
need not reach the issue of whether the community housing requirements in the
Annexation Agreement be declared invalid as a tax in this case.  The Court also
declines the opportunity to comment further on Hailey's insistence that Old
Cutters abide an agreement to comply with an ordinance that the city has
apparently decided was ill-advised or defective, and has repealed, while
allowing other developers relief from similar community housing requirements.

MEMORANDUM OF DECISION - 68

ordinance.  In the absence of any evidence that Hailey intends to enforce

the ordinance against Old Cutters without regard to the invalidity of the

provisions in the Annexation Agreement, the Court deems it unnecessary

to consider imposition of an injunction against Hailey.  On this record, Old

Cutters' motion for summary judgment as to Count III of its complaint will

be denied without prejudice to renew that request if Hailey should attempt

to take action against Old Cutters based on the Annexation Agreement.

### *Conclusion*

Recapping the Court's decisions above, the Court concludes that the

annexation fee and community housing provisions of the Old Cutters-

Hailey Annexation Agreement are unenforceable.[24]  Old Cutters' motion

for summary judgment is granted as to Counts I and II of its complaint.

Old Cutters' motion for summary judgment on Count III of its complaint

requesting injunctive relief is denied without prejudice.

MWB's motion for summary judgment declaring Hailey's lien

---

[24]  Because the Court rules that these provisions are unenforceable under
Idaho law, the Court need not address Old Cutters' and MWB's constitutional
arguments.

MEMORANDUM OF DECISION - 69

unenforceable under the Idaho statute of frauds and mortgage statutes is denied. MWB's motion requesting summary judgment disallowing Hailey's proof of claim in the bankruptcy case is granted. MWB's remaining requests for relief in its motion are rendered moot based on the relief granted in this decision to Old Cutters.

Hailey's motion for summary judgment is denied as to Count I and Count II of Old Cutters' complaint. Given the Court's rulings, Hailey's motion for a summary judgment regarding the injunction requested in Count III of Old Cutters' complaint is granted.

Hailey's motion for summary judgment as to MWB is granted in part with respect to the creation of a lien. Of course, since Hailey does not hold an enforceable claim to collect any further amounts from Old Cutters under the Annexation Agreement, Hailey's lien is unenforceable, clouds the title to the Property, and should be removed.

Counsel for Old Cutters and MWB shall promptly submit an proposed form of order and summary judgment consistent with this Memorandum for entry by the Court. Counsel for Hailey shall approve

MEMORANDUM OF DECISION - 70

the form of order and judgment.

The trial scheduled in this adversary proceeding is vacated.

Dated:  December 31, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 71